IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ZOSIMA MILLER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:23cv305 |
| | ) | **Electronic Filing** |
| **BRANDSAFWAY INDUSTRIES, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION**

### I.      INTRODUCTION

Zosima Miller ("Plaintiff") commenced this action against Brandsafway Industries ("Defendant") alleging it unlawfully terminated her employment in violation of the Pennsylvania Medical Marijuana Act ("PMMA") and public policy. Presently before the Court is Defendant's Motion to Dismiss. For the reasons set forth below, Defendant's motion will be denied as to Plaintiff's PMMA claim and granted as her public policy claim.

### II.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim and the defense of failure to exhaust administrative remedies. See Anjelino v. New York Times Co., 200 F.3d 73, 87 (3d Cir. 1999). It is well-settled that in reviewing a motion to dismiss under F.R.C.P. 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

    "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are "'merely consistent with' a defendant's liability." Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted

deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 556 U.S. at 678 ("'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same).  Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("'The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Twombly, 550 U.S. at 563.

### III. PROCEDURAL AND FACTUAL BACKGROUND

Prior to her employment with Defendant, Plaintiff was diagnosed with a general anxiety disorder.  Complaint (Doc. No. 1-1) at ¶ 7.  Following her diagnosis, Plaintiff obtained a medical marijuana card in or around June of 2022 to treat her general anxiety.  Id. at ¶ 12.

On or about June 6, 2022, Defendant hired Plaintiff as an industrial painter.  Id. at ¶ 13. Plaintiff provided her Medical Marijuana Card to her supervisor, Chris Gongaware, around the same time.  Id. at ¶ 14.  Gongaware made a photocopy of Plaintiff's card.  Id. at ¶¶ 15-16. Gongaware advised Plaintiff that he would present her card if, or when, it was needed.  Id. at ¶

3

17. Over the course of the next several days Plaintiff received positive feedback about her work performance and was not subject to any work discipline.  Id. at ¶¶ 18-19.

On or about June 20, 2022, Plaintiff underwent a routine random drug test.  Id. at ¶ 21. The testing had two components: an oral fluid test and a hair follicle test.  Id. at ¶ 23.  An oral fluid test is designed to detect THC and commonly detects the usage of marijuana in the past 24 hours; the hair follicle test reveals the use of marijuana in the past 90 days.  Id. at ¶ 23(a)-(c).

After the test was taken Plaintiff expressed concern to Gongaware about receiving a positive result and assured him that she would not put anyone at work in danger by using marijuana on the job.  Id. at 24.  Gongaware stated he knew Plaintiff would not do so and indicated they should just wait and see what happened.  Id.  Gongaware knew Plaintiff was not under the influence of marijuana at work.  Id. at ¶ 25.

On or about June 27, 2022, Plaintiff's test results came back as negative for the oral test and positive for the hair follicle test.  Id. at ¶ 26.  Plaintiff immediately informed the testing company of her medical marijuana card.  Id. at ¶ 27.  On that same day Defendant terminated Plaintiff's employment for "violation of site and company drug and alcohol policies."  Id. at ¶ 28.  Upon information and belief, Plaintiff alleges that Defendant permits other employees to remain employed if they use prescription medications that would be evident in a drug screening test (and would place the employee in violation of the company's policies), just not individuals with medical marijuana cards.  Id. at ¶ 29.

In or around July of 2022, defendant changed Plaintiff's termination to reflect a "layoff." Id. at 30.  Nevertheless, Plaintiff was not permitted to return to work.  Id.

On December 8, 2022, Plaintiff filed this action in the Court of Common Pleas of Allegheny County.  Id. at 8.  Defendant removed the case to this court on February 24, 2023.

4

Defendant's Notice of Removal (Doc. No. 1) at p. 1.  On or about the same date, Plaintiff filed a complaint with Pennsylvania Human Relations Commission raising a claim under the Pennsylvania Human Relations Act that Defendant terminated her based on her "disability" of having a "generalized anxiety."  Defendant's Brief in Support (Doc. No. 8) at p. 15 (quoting Plaintiff's PHRC Complaint).[1]

Defendant advances three central arguments in support of its motion to dismiss.  First, Plaintiff's claims are completely preempted and can only be brought under § 301 of the Labor Management Relations Act ("LMRA").  Because her ability to obtain relief is limited to § 301, Plaintiff is precluded from bringing her claims because she failed to exhaust administrative remedies provided by the CBA and any effort to do so now would be untimely.  Second, Plaintiff's common law wrongful discharge claim is not available to unionized employees and the PMMA does not provide a source of public policy to support a wrongful discharge claim in any event.  Finally, the facts asserted in the complaint and those submitted to the Pennsylvania Human Rights Commission are inconsistent and contradictory, resulting in Plaintiff being judicially estopped from pursuing any purported claim under the PMMA.  For these reasons, Defendant maintains that its motion to dismiss must be granted.

Plaintiff contends that her claims under the PMMA and public policy exist independently from the CBA and do not depend upon or interfere with its administration in any way, thereby placing the claims outside of § 301 preemption.  Further, the Pennsylvania courts have not

---

[1] Although the focus in assessing a motion to dismiss is on the allegations set forth in the pleadings, "matters of public record, orders [and] exhibits attached to the complaint" also may be considered without converting the motion to one for summary judgment.  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1357).  Accordingly, the Court takes judicial notice of Plaintiff's publicly filed charge with the PHRC.

5

imposed the heightened causation standard for claims pursuant to the PMMA as advocated by Defendant. And any perceived inconsistency in the allegations of the complaint and Plaintiff's charge with the PHRC is permissible under Rule 8 and does not preclude her from moving forward with the claims in this court. For these reasons, Plaintiff maintains that Defendant's motion should be denied.

## IV.   PREEMPTION

Plaintiff's claim for violation to the PMMA is not preempted by § 301 of the LMRA. The cause of action is predicated on rights conferred by state law, not the CBA. And Plaintiff's claim under the PMMA does not depend upon or require an interpretation of any provision of the CBA.

"When ascertaining Pennsylvania law, the decisions of the Pennsylvania Supreme Court are the authoritative source." In re Trustees of Conneaut Lake Park, Inc., 855 F.3d 519, 522–23 (3d Cir. 2017) (quoting Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010)). Where the state's highest court has not yet addressed the question at hand, a district court must predict how the state's highest court would resolve the issue. Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 45-46 (3d Cir. 2009). "In predicting how the highest court of the state would resolve the issue, [we] must consider 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" Id. (quoting Nationwide Mutual Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000) and McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 663 (3d Cir. 1980)).

Plaintiff seeks to advance a claim predicated on the PMMA. A "private right of action" pertains to "[a]n individual's right to sue in a personal capacity to enforce a legal claim."

6

MERSCORP, Inc. v. Del. Cty., 652 Pa. 173, 207 A.3d 855, 884 (Pa. 2019) (Donohue, J., Dissenting) (quoting Black's Law Dictionary 1520 (10th ed. 2014)).  The Pennsylvania Supreme Court applies a three-part test derived from Cort v. Ash, 422 U.S. 66, 78 (1975), to determine whether a state statute sufficiently implies a private right of action.

Implied authority for a private cause of action exits when (1) the plaintiff is part of a class for whose 'especial' benefit the statute was enacted; (2) there is an indication of legislative intent to create or deny a remedy; and (3) an implied cause of action is consistent with the underlying purpose of the legislative scheme.  MERSCORP, 207 A.3d at n. 14 (Pa. 2019).

Only a few Pennsylvania courts have analyzed whether there is a private right of action under the PMMA.  And while Defendant correctly notes that the Pennsylvania Supreme Court has not decided whether the statute creates a private right of enforcement, every Pennsylvania court to consider the issue has ruled that the PMMA does contain such legal remedies.  For instance, in Hudnell v. Thomas Jefferson Univ. Hosps., Inc., the Eastern District of Pennsylvania found that the PMMA implies a private right of action.  537 F. Supp. 3d 852, 862 (E.D. Pa. 2020).  The court reasoned that if such a right did not exist, the PMMA would be left with no enforcement mechanisms under Section 2103(b)(1), which clearly provides legal protections for cardholders, including employment protections.  Id. at 860.

Relying on Hudnell as well as other courts, the Pennsylvania Superior Court agreed that a plaintiff could maintain a private action under the PMMA.  Palmiter v. Commonwealth Health Sys., Inc., 260 A.3d 967, 977 (Pa. Super. Ct. 2021).  Since then, other courts have taken notice of the appellate court's ruling.  See Della Vecchio v. Cleveland-Cliffs, Inc., No. CV 22-4932, 2023 WL 3727001, at *4 (E.D. Pa. May 30, 2023) (holding that "this Court finds that the legislature intended to create a private right of action under the PMMA."); see also Reynolds v. Willert

7

Mfg. Co., LLC, 567 F. Supp. 3d 553, 557 (E.D. Pa. 2021) (stating "[t]he Superior Court of Pennsylvania held that the PMMA contains an implied private right of action for individuals who suffer an adverse employment action on account of their status as a certified user of medical marijuana.").

Although supporting case law on this issue is far from robust, the cases discussing this issue are all in agreement that the PMMA does create a private right of action. Therefore, based upon the persuasive nature of these rulings from the Pennsylvania and federal courts, this Court sees no reason to reach a different result and concludes that the Pennsylvania Supreme Court would conclude that the PMMA creates a private cause of action.

Furthermore, Plaintiff's claim under the PMMA is not substantially dependent on the CBA. It is well-settled that a statutorily created state cause of action is not preempted under § 301 of the LRMA merely because the cause of action asserts a right that relates in some way to a provision in a collective bargaining agreement or involves the parties to such an agreement. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985). Section 301 does give the federal courts exclusive jurisdiction over violations of collective bargaining agreements. 29 U.S.C. § 185(a). And where applicable, that section "not only provides the federal courts with jurisdiction over controversies involving collective-bargaining agreements but also authorizes the courts to fashion 'a body of federal law for the enforcement of these collective bargaining agreements.'" United Steelworkers of Am., AFL–CIO–CLC v. Rawson, 495 U.S. 362, 368 (1990) (quoting Textile Workers v. Lincoln Mills of Ala., 353 U.S. 448, 451 (1957)).

But a state-law claim is preempted by § 301 only if the claim is (1) "founded directly on rights created by collective-bargaining agreements" or (2) "substantially dependent on analysis of a collective bargaining agreement." Caterpillar v. Williams, 482 U.S. 386, 394 (1987). For

preemption purposes, a state-law claim is not independent of the collective bargaining agreement if its evaluation "is inextricably intertwined with consideration of the terms of the labor contract." Lueck, 471 U.S. at 213. The term "substantially dependent" has been interpreted as meaning "inextricably intertwined." Ballard v. BHI Energy, Inc., No. CV 22-115, 2022 WL 4464959, at *4 (W.D. Pa. Sept. 26, 2022) (citing Lueck, 471 U.S. at 213). In the event that the resolution of a state-law claim is substantially dependent upon an analysis of the terms of a CBA, the claim must either be treated as a § 301 claim or dismissed as preempted by federal labor-contract law. Lueck, 471 U.S. at 220 (1985).

Of course, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." Lueck, 471 U.S. at 211; see also Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 229 (3d Cir. 1995) ("the mere existence of a collective bargaining agreement does not prevent an individual from bringing state law claims based on some independent agreement or obligation."). Generally, the LMRA has no preemptive effect where there are "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract," Lueck, 471 U.S. at 212, or "where the state law claim can be resolved without substantially interpreting the collective bargaining agreement itself." Lueck, 471 U.S. at 220. In contrast, when "[t]he heart of the [state-law] complaint [is] a . . . clause in the collective bargaining agreement, that complaint arises under federal law." Caterpillar, 482 U.S. at 394.

The relevant inquiry is whether the resolution of Plaintiff's PMMA claim requires "the *interpretation* of a collective bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988) (emphasis added). The term "interpretation" has not been construed to mean simply referring to or tangentially involving a term in a collective bargaining agreement.

9

See Beauregard v. Broadway Elec. Serv. Corp., No. 2:21-CV-1600, 2022 WL 2293969, at *6 (W.D. Pa. June 24, 2022) ("mere consultation of a collective bargaining agreement does not trigger LMRA preemption."). Instead, in ascertaining whether a state-law claim is "independent" of a collective bargaining agreement, a court must focus on the "legal character of [the] claim" as opposed to its factual underpinnings. Id. (quoting Livadas v. Bradshaw, 512 U.S. 107, 123 (1994)). "In other words, 'even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes.'" Id. (quoting Lingle, 486 U.S. at 409–10).

      Here, Plaintiff's statutory PMMA claim is not preempted by operation of § 301 because the PMMA establishes rights and obligations that are independent of the labor contract and the claim can be resolved without interpreting the CBA itself. The fact that the CBA contains a general prohibit against the use of controlled substances in the workplace does not make resolution of the PMMA claim "inextricably intertwined" with the CBA. Lueck, supra. As an initial matter, Plaintiff does not seek to recover based on a right or form of entitlement under the CBA. In fact, Plaintiff does not even mention the CBA in her complaint. The only claims plaintiff seeks to advance are two state law claims that are available to any employee, not just those subject to the particular collective bargaining agreement between the parties. And while it is true that Plaintiff cannot avoid preemption simply by withholding mention of the CBA or § 301, she does not have to rely on or interject any aspect of the CBA to advance her right of recovery under the PMMA.

Furthermore, her state law claims do not require interpretation of any provision of the CBA and are sufficiently distinct from the agreement itself. No aspect of Plaintiff's PMMA or wrongful termination claim is inextricably intertwined or substantially dependent upon an analysis of the parties' agreement. In fact, the only reference to the CBA is raised by Defendant. It argues that the Court must interpret Article XVII-Safety, and Article XXIII regarding "proper cause." (Defendant's Memorandum in Support at 7). On this issue the Third Circuit's decision in Kline v. Sec. Guards, Inc., is dispositive. 386 F.3d 246 (3d Cir. 2004).

In Kline, the defendants secretly installed an audio and video surveillance system in the entryway of one of its facilities. Kline, 386 F.3d at 250. The plaintiffs brought suit under state privacy statutes and common law invasion of privacy. Id. The defendants removed the case to the Eastern District of Pennsylvania and asserted the court had jurisdiction because the claims were completely preempted by § 301. Id. In support of their contention, the defendants argued that the state law claims "necessarily implicate[d]" certain clauses of the CBA and could not be analyzed without reference to the CBA. Id. at 255. In rejecting the defendants' argument, our Court of Appeals stated: "[a] finding of § 301 preemption is not mandated simply by the contention that Appellants' state law claims "necessarily implicate" the CBA. That is, the mere fact that we must look at the CBA in order to determine that it is silent on any issue relevant to Appellants' state claims does not mean that we have "interpreted" the CBA." Id. at 256.

In support of its decision, the court in Kline cited Cramer v. Consolidated Freightways Inc., 255 F.3d 683, 691 (9th Cir. 2001). In Cramer, the Ninth Circuit held that a defendant cannot defensively rely on the CBA's terms to trigger § 301 preemption. Specifically, the court stated:

> The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301

11

preemption is not mandated simply because the defendant refers to the CBA in mounting a defense.

255 F.3d at 691 (citing Caterpillar, 482 U.S. at 398–99). Further, mere "creative linkage" between the subject of the state law claim and a provision in the collective bargaining agreement is insufficient. Cramer, 255 F.3d at 692. In other words, "the proffered interpretation argument must reach a reasonable level of credibility." Id.

Similarly, here, Plaintiff's claims are not preempted simply because Defendant states that the Court must analyze the CBA. Plaintiff has not alleged a violation of any term or condition of the CBA nor has she asked the Court to interpret any of its provisions. Although her state claims involve conduct that can be perceived as being related to conduct covered by the CBA, they are nonetheless grounded on individual substantive rights grounded in the state statue and state law. Indeed, Plaintiff's ability to recover under the PMMA is entirely dependent upon whether she can establish that Defendant violated the prohibitions it establishes. Thus, preemption is not mandated here simply because Defendant asserts § 301 as a defense.[2]

## V. WRONGFUL DISCHARGE CLAIM

Plaintiff's wrongful discharge claim is not actionable regardless of whether she is an "at-will" or union employee subject to a collective bargaining agreement. "It is well established under Pennsylvania law that only at-will employees may bring wrongful discharge claims." Raczkowski v. Empire Kosher Poultry, 185 F. App'x 117, 119 (3d Cir. 2006) (citing Phillips v. Babcock & Wilcox, 503 A.2d 36, 37 (Pa. Super. Ct. 1986); see also Coppola v. JNESO--Pocono Med. Ctr., Dist. Council 1, IUOE-AFL-CIO, No. 3:08-CV-0798, 2009 WL 2707573, at *2 (M.D.

---

[2] Of course, because Plaintiff's claims are not preempted by § 301, she was not required to exhaust the grievance and arbitration procedures under the CBA before filing suit in this Court.

12

Pa. Aug. 25, 2009) (stating "under Pennsylvania law an employee represented by a labor union and covered by a collective bargaining agreement cannot maintain [a wrongful discharge cause of action]."). The cause of action for wrongful discharge judicially was created for at-will employees "to provide a remedy for [those] employees with no other recourse against wrongful discharge." Phillips, 394 Pa. Super at 354.

Here, Plaintiff is not at-will employee. According to her complaint, she is a member of the International Union of Painters and Allied Trades Local 57. (Complaint at ¶9). Further, although it does not preempt her claims, her employment was subject to a collective bargaining agreement that established her status as a union employee. Thus, Plaintiff's status as a union employee prevents her from bringing a wrongful discharge claim.

However, even assuming for the sake of argument that Plaintiff is "essentially an 'at-will' employee," she does not present authority to support the proposition that a public policy exception supports her wrongful discharge claim. In Pennsylvania, "as a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." Weaver v. Harpster, 601 Pa. 488, 975 A.2d 555, 562 (2009). Exceptions to this rule have been recognized in only the most limited of circumstances. Spyridakis v. Riesling Grp., Inc., 398 F. App'x 793, 799 (3d Cir. 2010) (citing Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 918 (Pa. 1989)).

To establish a claim for wrongful discharge in the at-will employment context, a plaintiff must show that her termination "threaten[ed] clear mandates of public policy." Weaver v. Harpster, 975 A.2d 555, 563 (Pa. 2009). Where the public policy claimed to be violated is not clear, a cause of action for wrongful discharge will not be recognized. McGonagle v. Union Fid. Corp., 556 A.2d 878, 884 (Pa. Super. Ct. 1989).

Pennsylvania courts have recognized a threat to a clear mandate of public policy on very few occasions. Hudnell supra, at 862. (citations omitted). Further, the "only Pennsylvania cases applying the public policy exceptions have done so where no statutory remedies were available." Wolk v. Saks Fifth Ave. Inc., 728 F.2d 221, 223 (3d Cir. 1984) (quoting Bruffett v. Warner Communications, Inc., 692 F.2d 910, 912 (3d Cir.1982)).

Here, there is no indication from the Pennsylvania courts that discharge in violation of the PMMA threatens a clear mandate of public policy. When comparing Plaintiff's claim to the limited circumstances in which Pennsylvania courts have found a public policy exception to support a wrongful discharge claim, the facts of this case differ substantially. And as noted above, Plaintiff has statutory remedies provided to her by the PMMA. Therefore, Plaintiff's wrongful discharge will be dismissed.

## VI.   PLEADING IN THE ALTERNATIVE

Defendant's contention that Plaintiff's PMMA claim is inherently inconsistent with her allegations in a filing with the Pennsylvania Human Relations Commission ("PHRC") is misplaced. On the same date that Plaintiff commenced this action, she filed a "complaint" with the PHRC alleging Defendant fired her for having a disability due to her generalized anxiety disorder. Defendant posits that such a claim is a "judicial admission" precluding Plaintiff from pursuing a claim predicated on Defendant's asserted intent to terminate her based on her status as a medical marijuana card holder. But a plaintiff can plead alternative legal theories in support of different claims for relief. And this is particularly so where the alternative theories concern the defendant's state of mind and/or motivation and the factual allegations plausibly support the inference that there were alternative reasons for the employer's material adverse action.

As a general matter, pleading inconsistent claims is permissible under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); see also Weimer v. Cnty. of Fayette, Pennsylvania, No. CV 17-1265, 2018 WL 4404033, at *14 (W.D. Pa. Sept. 14, 2018) ("At the motion to dismiss stage a plaintiff 'may plead alternative and inconsistent legal causes of action arising out of the same facts.'"); Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Essex Ins. Co., No. CIV.A. 13-32, 2013 WL 6328792, at *5 (W.D. Pa. Dec. 5, 2013) (stating "[a]lternative pleading allows a party to plead different theories of a claim when the relevant factual or legal issues differ, or they afford different relief."); Smith v. Giant Eagle, Inc., No. 2:10-CV-01644, 2011 WL 1706520, at *3 (W.D. Pa. May 4, 2011) (rejecting the defendant's argument that a plaintiff cannot assert inconsistent legal theories during the pleading stage in an employment discrimination case where one claim required but-for causation and others did not).

Relying on Reynolds v. Willert Mfg. Co., LLC, Defendant contends that Plaintiff cannot assert two grounds for her discriminatory termination because the Eastern District of Pennsylvania has interpreted the PMMA to require "but for" causation. Plaintiff maintains that the Defendant's reliance on Reynolds is misplaced.

Defendant's approach fails for a multitude of reasons. First, the Eastern District's interpretation is not binding on this Court. Considering that neither the Pennsylvania Supreme Court nor any other state court has interpreted the PMMA as requiring "but for" causation, this Court is hesitant to take such a leap. And although Defendant is adamant that this is the correct analysis, it appears that such an interpretation would be too narrow and render the PMMA without an effective enforcement mechanism. However, we need not decide that issue at this juncture.

15

It is enough that Defendant's argument fails because it has been clearly established that a Plaintiff may plead more than one alternative legal theory even though the allegations might be perceived as inconsistent. Plaintiff's PMMA claim pertains to Defendant's intent, and since there has been no discovery, Plaintiff must be able to plead inconsistently. See McGuckin v. Brandywine Realty Tr., 185 F. Supp. 3d 600, 607 (E.D. Pa. 2016) (holding that, prior to discovery, Plaintiff may plead inconsistent claims, even if Plaintiff might not be able to recover on both theories.). And this surely has equal application to any underlying claim that is still in the administrative process and has not been amended into the current lawsuit.

And even if we were to look beyond the pleading stage, Defendant's assertion would nevertheless be premature. Even assuming Plaintiff's PMMA claim and her disability claim involve differing forms of discriminatory animus and causation, whether the finder of fact might find one theory more convincing than another also need not be answered at this stage. See Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Tidewater Equip. Co., No. 3:21-CV-00551, 2022 WL 896876, at *7 (M.D. Pa. Mar. 9, 2022) ("Pleadings under alternative theories may be plausible, and thus sufficient to withstand a motion to dismiss, even if one or both theories of recovery both ultimately fail, either because the ultimate fact-finder is unconvinced that either theory has been proven or because the proof of one theory necessarily excludes recovery under the alternative theory. Such alternative pleadings are common, encouraged, and employed as a matter of general practice in modern civil litigation.") (quoting Forrester Lincoln Mercury, Inc. v. Ford Motor Co., No. 1:11-CV-1136, 2012 WL 1642760, at *6 (M.D. Pa. May 10, 2012)). It follows that Defendant is not entitled to dismissal based its asserted "judicial admission"/incompatible causation defense.

## VII.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss will be granted as to Plaintiff's wrongful discharge claim at Count II and denied in all other aspects. The dismissal of Count II will be without prejudice to its reinstatement, if appropriate, in the event Plaintiff becomes unable to pursue her PMMA claim. An appropriate order will follow.

<u>Date: March 15, 2024</u>

<u>s/David Stewart Cercone</u>
David Stewart Cercone
Senior United States District Judge


cc: Rachel L. McElroy, Esquire
　　Eric J. Janson, Esquire

　　(*Via CM/ECF Electronic Mail*)